May it please the Court, This Court should reverse the District Court's ruling that the 998 patent is invalid on the basis of recapture because the Court improperly construed the claims. Contrary to the District Court and AIAE's construction that starts with extrinsic evidence, we believe Magotteaux's construction that closely follows what has been described as the invention and how to make the invention in the specification is the correct construction. Adopting Magotteaux's construction is consistent with the specification and Magotteaux's construction that homogeneous ceramic composite and homogeneous solid solution are synonyms for the ceramic pad made by aggregating fused grains of alumina and zirconia. What do you think is the strongest portion of the specification in your favor? Walk me through the analysis because there's nothing, obviously this is not a here's the definition for you type case. So you have to build the case for your definition. I think we can all agree anomalous definition of solid solution for purposes of this case from among other things the spec. Where in the spec do we find? Essentially in the bottom of column 2 through column 3, Your Honor, and at the bottom of column 2 around line 60 is the inventor's description of the main ceramic insert surrounded by metal and so he talks about the ceramic insert itself made of ceramic material itself composite consisting of a solid solution or homogeneous phase of 20% to 80% alumina and 80 to 20% zirconia. So he at that point he is describing for the ordinary one of ordinary skill that this thing is a composite and it has another additional characteristic. It is homogeneous. Go ahead. On column 3. Don't you have the additional problem Mr. Rigg that a person of skill in the art is going to know both of these meanings? Which? They're going to know the distinction between a solid solution and a ceramic composite. I think your question assumes though that they take the meaning of solid solution from the extrinsic definition. When they read the spec. Does a person of skill in the art know the distinction? Between a ceramic composite and a solid solution? Yeah. I don't think necessarily they do. Isn't your point that the bottom of solid solution. And that in nowhere else maybe you'll correct me in the specification does it refer to solid solution? No it does not. But it goes on and describes. Remember what solid solution is describing in the patent is the ceramic pad. The specification goes on in great detail how to make the ceramic pad and it says at column 5 for it gives an example of mixture of 75% of you fuse those two together and you create a composite grain. The patent goes on and says now you take these composite grains, you aggregate them, you pile them into a mold, you add some adhesive and you've made a ceramic pad. That's what is being described in the specification and that's the only description of how that ceramic pad is made. So solid solution and homogeneous phase have to be describing that ceramic pad made by fusing alumina and zirconia together to make these ceramic grains that are then piled together. Your point is that when these new claims were introduced they didn't expand the subject matter claims. They're claiming the same thing. They are synonyms for that thing which was described and I would say like William Shakespeare, Romeo and Juliet, what's in a name? That which we call a rose by any other name would smell as sweet. In this case the only thing we did was change the name from homogeneous solid solution to homogeneous same ceramic pad and the only method disclosed in the patent for creating that ceramic pad. It can't mean anything else. Taking a look at column three lines 56 through 61, it strikes me that maybe there's some slightly loose language but the way I'm reading that is you're talking about aluminum oxide and the zirconium dioxide. We say within the pads the zirconium particles. Now when you say zirconium you mean the zirconium oxide. Correct. Present in the alumina and there it wasn't entirely clear to me what you mean by alumina in that context because are you referring to the whole composite? Aluminum oxide, Al2O3. Zirconium particles are not present in the alumina, they're mixed together. Either alumina is an awkward word or present in is an awkward word. It is somewhat awkward. It's talking about the zirconium particles are smaller and what they do when they're fused is they fill the cracks of the alumina and they make it more resistance to breakage but they are not in solution. They aren't broken down at the atomic level and formed into a lattice of one crystalline lattice I guess is what you're saying. That would be a solution, a solid solution right? Exactly. But the difference I take it is the particles maintain their chemical integrity and they're merely physically associated. Correct. Okay and so you're saying that within the pads the zirconium particles present in the alumina make it possible to increase the and so forth greater than each of the components considered in isolation, namely zirconium oxide and aluminum oxide. That is to say the suggestion I take it from this passage that you're drawing is that these molecules maintain their separate identity in whatever I call it. Whether I'm calling it a solution, probably incorrect diction, or a composite. Correct. Which is what you ultimately came up with. Right. That's the support you draw from that passage. Yeah and that entire passage as well your honor talks about zirconia has certain characteristics of making the product tougher. Alumina has the characteristics of making it harder and that you combine these in this composite and you adjust the proportions you can make the product depending on its environment. These things are used for crushing rock and iron ore and so if you're getting a pounding you want it harder. If it's a more abrasive material you want it tougher and you can adjust those. Go ahead. You can adjust the characteristics of the final product by adjusting the amount of zirconia and the amount of alumina in that within the 20 to 80 percent range. Now if you were to have, does the record reflect, it may and I just may have dioxide and aluminum oxide, does the record reflect what the percentage of each of those constituents would be? You can't have an equilibrium solid solution of alumina and zirconia. They are not miscible in one another. They're like oil and water. Well, Dr. Glaser said that right? Yeah and Dr. Glaser also went on and then said, just so we're clear, he said you can't do it at an amorphous sense but then he goes on further and says he cites to a study and the study would not have made these grains in a size that would have been approaching the size that are needed as described in the past. Taking the term solid solution as it's normally understood, you can have a single crystalline lattice that contains both zirconium and aluminum, correct? No. No? No. You can't. No, you cannot. Could you take, excuse me, I wanted to take you up a little higher into column three when it discusses the conventional method, ceramic grains manufactured in a conventional way. This is at line 28. Yes. By electrofusion, by sintering. What would one of skill in the art understand there? What can be done conventionally? You can fuse alumina and zirconia together to make a composite where they each retain, each alumina and zirconia retain their crystalline structure. They are not in solution. That's what is meant by conventional means. And to be clear, making fused grains. What we did was take those fused grains and figure out that we could insert them into a metal casting and they would provide a very good hardness and toughness. So this was well known, fusing the grains. What do you say about, I think it's footnote nine of, I believe this is Dr. get a solid solution of zirconium and zirconium dioxide and aluminum oxide? Correct. Yeah. And my comment is, this is not a conventional way of making the grains. It's an amorphous. It's not at equilibrium. It is making the only way that it makes, and they call it a solid solution. It's in amorphous. It's like glass. Right. But it would still qualify as a solid solution under the conventional definition of solid solution, right? If you called it an amorphous solid solution, yes. I think, I believe that solid solution would be considered at equilibrium. Okay. And your claims are not at equilibrium, right? The claims don't say equilibrium, but they say that the fusion of the grains is at equilibrium in a conventional manner. Not flame pressure atomization. No. So your suggestion, if I understand what you're saying about this footnote, and I think you've briefly said the same, is that this is really extreme circumstances that are required to develop this. And even then you don't get equilibrium, is that? Yeah. You don't get equilibrium. And this is a microscopic amount. This is a theoretical scientist looking at making a solid solution in microscopic amount. Not in the size of the grains that are required in the claims. Just one quick point. 80 to 20 and 20 to 80 does have equilibrium within it, right? You can have 50 to 50 in those ranges, right? You could make it 50-50. But you say that's impossible. No, no. It's impossible. It's impossible to make it as a solid solution as AIE and the district court defined it. As a fused grains, yes, you can have 50% alumina, 50%... You can have anything you want. You can have 1% of one and 99.9% of the other, right? Yes. If you're just fusing, you could have any percentage you want. Right. Complete freedom. And we limited it to the 80-20 because we found that's where we got the best characteristics of the product. So the bottom line, I take it, is that what you're saying is that if the term solution in the original patent were read to mean the conventional chemical meaning of solid solution, this patent would have been effectively inoperative. Correct. Thank you, Mr. Rigg. Save your rebuttal time, Mr. Leiberwerf. May it please the court. This court should affirm the district court's conclusion that in order to overcome the PTO's objections to the 176 patent application, Magato surrendered subject matter other than, quote, homogeneous solid solution as that language is commonly and ordinarily understood and then attempted to recapture that surrendered subject matter by changing solid solution to ceramic composite in the 99.8 patent. The specification of the 176 patent, the one to which the court specifically referred recently in column two, explicitly refers to the invention as being based on a, quote, solid solution and more importantly Magato repeatedly relied on the distinguishing feature of having a, quote, homogeneous solid solution to distinguish the LARMI patent in particular. Wouldn't one of skill in the art have known right at the outset that, as Dr. Glazer told us, that a solid solution would be impossible at these ranges. It had to be a ceramic composite and one of skill in the art would have known that and perhaps would have read that specification passage to make that clear. I think there is another way of looking at this. If you look at the prosecution history, LARMI in particular had two things. Number one, it had a ceramic composite as Magato has defined it and the examiner specifically cited the portions of LARMI that did. Number two, it described those ceramic composites as being made by sintering and so what Magato was claiming before it made its representations to the patent office was something that LARMI had already accomplished and so a person skilled in the art looking at the entirety of the intrinsic record alone would know that Magato was claiming that he had done something extra. I'd like to also correct one thing that I, with which I respectfully disagree with my colleague and that is that the question is not that you can't have a solid solution period of Illumina and Zirconia, it's at equilibrium. It's that you can't have it, I think there is an agreement that you can't have it within the percentage ranges at issue here. It's not impossible. It would be on the, if you had a phase diagram in front of you, what you would have is on the outer edges of the phase diagram. So what Magato is saying essentially in its representations to the patent office is whether it was by the phase diagram or some other way, we found a way, because the patent is all about the ceramic combination, we found a way to move in to those ranges. That's what Magato was representing to the patent office and it did so not once, not twice, but multiple times. Now your answer to my initial question was that LARMI somehow makes this all clear, but the patent office reissued this patent, didn't they? They did. You're saying they made two mistakes, not just one. I think they made a mistake in reissuing it, that's true, but I think if you look at what Magato said to the patent office in the prosecution of the 176 patent, they accepted what Magato was telling them and if you accept what Magato was telling them, then I don't think that was error. The error is in the recapture. Well, there was no recapture unless they have different meanings. You mentioned the specification reciting solid solution, but I found only one mention of solid solution and that is in the same sentence with ceramic composite. It actually doesn't use those two words ceramic and composite right next to each other. What it specifically says is a ceramic itself a composite and then come the magic words because if you under ordinary English, if you ask yourself as a person skilled in the art, a person reading the patents is, you look at the patent you say it says a ceramic itself a composite and then it uses the words consisting of and so if there's a definition, it's what follows. If there's a ceramic composite that has a particular meaning in this patent, it's what follows after the words consisting of and what does that say? It says consisting of a solid solution or homogeneous phase. There's no dispute in this case that a phase has its ordinary meaning. No one's contended otherwise and solid solution, a person skilled in the art would certainly know. This is the definition if there is a definition in this patent that covers not any particular example, but what they say is the invention. If the patentee was being his own lexicographer at all, a matter which we dispute, what he was saying is if in my patent the word ceramic composite means it consists of a solid solution or homogeneous phase and that is clearly at odds with the ceramic composite for which they contend now. Now Judge Lurie focused us on the other solute present in the solid solution and yet example one expressly discusses adding other oxides. The district court's construction at that point was limited to claim one of the 176 patent which was at that point the only independent claim and that language in claim one had the limiting language consisting of as opposed to comprising. I think it is that to which the no other oxides and I believe that the 176 patent reference to which the court was referring would have been at JA00385 which is the 176 patent and the page that has claim one on it. It was not addressing the issue of what happened when they tried to expand the patent to add an independent claim, claim 12, which has the more open-ended construction of comprising. We do not take issue with adding claim 12 aspect of comprising. We take issue with the substitution of the phrase ceramic composite as Magato has defined it and solid solution. What do you make at column three if you turn to patent column three line 57 the reference to zirconium particles? What do you understand that to denote? I think what they were saying more generally there and I will suggest to the court that this is not the best written of patents. What they were suggesting there was merely to address the general issue of how one combines these different or combining these different oxides gives you different responses. I don't think the word particle has any particular significance there. You wouldn't refer to the zirconium in a solid solution as a particle. I think when you make it, it starts out as a particle. Yeah, but not when you end up, right? Not when you end up. You just add an atom. I don't think molecule actually, I think. Well, it's in the lattice. I take it that the oxygen and the zirconium are essentially disassociated. No, they're together in the lattice, right? No, the zirconium, which is ZrO2, and the alumina, which is Al2O3, are molecules which mix. They don't break up. The oxygen and the aluminum and the zirconium and the aluminum don't break up. They mix within the lattice. So if you had, imagine a bucket, if you like, of marbles, and some of them are red and some of them are blue, and maybe the blue ones are the zirconia part of atoms, or actually molecules, then what you'd still see would be blue and red uniformly mixed together in a solution. You wouldn't see blue and red combining to, my colors are failing me, whatever the cross between purple. You wouldn't see that. It's not heating to the point of breaking the bonds between the zirconia. But in any event, no chemist would describe a molecule as a particle, I assume. And one can describe subatomic particles as particles, but not a molecule. And I don't think we're at subatomic particles here, I agree. Okay. And one more question, if you would. When is your best, give us the best reference to the prosecution history for your contention that the discussion, in the discussion of Lamy, the patentee retreated to the conventional notion of solid solution? To do that, I would start, and I'll ignore for a moment the column two, line 60 through 65 in the specification, since we've already talked about that. That's what starts out in the history, that was in the specification that was proposed. The part that says ceramic, itself a composite, and then says consisting of a solid solution or homogeneous phase. You would start there. But let me go to what follows after they get the rejection from the patent office. The first thing is that the examiner rejects the proposal based on Lamy, and he cites specific portions of Lamy. And where are you in the, are you in the joint appendix here? Yes, and I'm going to give you references. Okay, good. Okay. So the Lamy patent, first of all, the rejection is at JA00326. All right. And then in the Lamy patent itself, there are, and he cites columns nine, line 30 through 35, and figure four. That particular reference in the Lamy patent, which is also in the record, is JA00110. And those portions specifically disclose, and I quote, zirconia uniformly and randomly distributed throughout aluminum crystallites. That's in Lamy. Figure four, referenced by both the patent examiner's rejection and the patent itself, shows zirconia distributed in aluminum background, but with the zirconia retaining its separate crystalline structure, the same for which they contend. So this is in the prior art. And I would further point the court to Lamy lines column nine, lines 39 through 43, which is at JA00110 and figure five, JA00103. And Pat Magneto responds, and also I would, forgive me for jumping around. In particular, Lamy also makes the same thing by Sintry, which is at JA00101. And what does Magneto do? Well, the first thing it does is it says, and I quote, this is in the attorney's response, the invention is based on the observation that the ceramic pad must- Where are you right now? I'm sorry. I'm going to give you the citation. It's JA00340. Okay. And that portion, this is from the attorney for Magneto, says, the invention is based on the observation that the ceramic pad must be a homogeneous solid solution. It doesn't say ceramic pad. It doesn't say there's an idiosyncratic definition of homogeneous solid solution. It just says what every chemist would know. Then at JA00342, the lawyer distinguishes the Japanese Pat Nakira by saying, the text of the Japanese publication never refers to a AL203 slash ZRO2 solid solution. And then not satisfied with that, they submit Monsieur Francois' declaration where he distinguishes Lamy and Nakira at JA00358 by saying, furthermore, no solid solutions of AL203 slash ZRO2 are used. And then in paragraphs four and five of his declaration, JA00359, he says, not that he tried one thing or another. He says, a lot of combinations of AL203 slash ZRO2 have been experienced by me. And he follows up with the only solid solutions of AL203. But is he just using the language there that had been used before they made the change? And are they making a distinction between solid solution and ceramic composite? Nowhere did they say ceramic. Well, they're making a distinction here from Lamy, which, if you read Lamy, is essentially the ceramic composite for which Magoto now contends. So to get out of the umbrella of Lamy, what Magoto did both in its lawyer's representations to the patent office and in a sworn statement of its inventor was to rely on homogeneous solid solution. And one more reference, if I may, again at JA00359, where Monsieur Francois says, our invention, what we've done is a homogeneous solid solution of both ceramics and meets the advantages of both AL203 and ZRO2. I might point out that that speaks to some extent to your question about the portion of column three where they're talking about the mixes. And what he's saying here is, I've tried the various mixes and our invention is a homogeneous solid solution that meets the advantages that are specifically referred to in column three. But the response says, the purpose of the Lamy patent is to produce abrasive grains, which may be used with a binder as a coating on a wheel or a disc. It's in fact related to new abrasive grains by a so-called Sol-gel process. That doesn't sound to me like ceramic composite, is it? But the substance of the material that is used for that is a ceramic composite. Regardless of for what purpose it's used for. I mean, if you look at Lamy. That may be, but the question that we have to decide, I guess, is whether there was a surrender of the difference between ceramic composite and solid solution as we conventionally understand it. And that the portion that Judge Lurie just read doesn't sound like such a surrender. I think you have to ask what an objective observer would look at. And that's what the standard is under the law. What an objective observer would look at in looking at the record as a whole. And what he'd see over and over and over again was the representation by Magato, both through its inventor and its lawyer, saying we have something different because we have a solid solution. And if you look at it, it's really not that great a leap. They're saying, if you look at the beginning of the patent, which we described in our earlier brief, the number of things they concede have been done already, including a metal matrix and putting the metal matrix together with combinations of alumina and zirconia, all had been done before. The only thing left for them was the solid solution. It was the only thing they had to carve out. And that's the reason that you see it in their representations to the patent office. And I might add, it's also the reason that in the European patent examination process, the examiner, as we quoted in our brief, specifically called out solid solution as the distinguishing feature. And since you say you can't do it, then they had reduced themselves down to zero. I think that what they were telling the patent office was that they had found a way to do it. It seems to me legally irrelevant that later they say, I guess we couldn't do it quite that way. Thank you, Mr. Lieberworth. Mr. Riggs, you have a minute and a half or so. Mr. Riggs, Mr. Riggs, tell us about the distinction over the Laramie patent. Why the emphasis on solid solution doesn't cost you your case? My understanding of Laramie was that it used precursor metals to impregnate grains, not in the same manner that we had a solid solution, homogeneous ceramic composite of aggregated grains together, already formed into a pad, and then impregnate those. So we were saying both that it's a solid solution, it's a ceramic pad, and the impregnation must occur into the pad. It was not saying that it was a solid solution as they defined it. You still, we're still, let me put it this way, throughout the prosecution history, we use solid solution. But we use solid solution for the only thing that we have disclosed in our patent, fused grains aggregated into a ceramic pad. And yes, we used it, but that's what the inventor meant. And he made clear in the specification, that's what he means. So the sheer number of times that we say solid solution doesn't change the definition. It's still what is claimed and described in the patent. I will leave with this. The best choice in doing claim construction in a patent is to start with the claims and the intrinsic evidence. When you start with an extrinsic definition, you run into trouble because it's not tied to what the inventor described as his invention, and what he claims as an invention. And that's what we've run into in this case. We've run into a situation where the district court adopted an extrinsic definition of solid solution that's not supported by the specification, that can't be made by the processes disclosed in the specification, and simply isn't present in the specification. The district court's decision should be reversed. Thank you, Mr. Riggs. That concludes our morning.